# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

FURRION PROPERTY HOLDING
LIMITED, and FURRION LIMITED,          )
                                       )
                    Plaintiffs,        )
        v.                             )          Case No. 3:19-cv-566-PPS-MGG
                                       )
WAY INTERGLOBAL                        )
NETWORK, LLC,                          )
                                       )
                    Defendant.         )

## OPINION AND ORDER

This case involves competing manufacturers of ovens for the recreational vehicle

industry. Plaintiff Furrion Property Holding Limited and Furrion Limited, which I will

refer to together as "Furrion," are the makers of a product dubbed the 2 in 1 Range

Oven. Defendant Way Interglobal Network LLC is a competitor in this space, and it

makes a product known as the Greystone oven. Furrion holds multiple design patents

relating to its 2 in 1 Range Oven and—you guessed it—alleges that Way Interglobal's

Greystone oven infringes on those design patents. Furrion has moved for a preliminary

injunction, asking that I bar any further sales of the Greystone oven while this lawsuit is

pending. But principally because Furrion has failed to meet its burden of showing

irreparable harm, the motion for a preliminary injunction will be denied.

## Background

Furrion is a Hong Kong-based company with offices in Elkhart, Indiana, and has

been in the RV appliance business since 2013. [Healy Decl. ¶ 4.] Way Interglobal is

likewise based in Elkhart[1]  and has been in the RV appliance business since 2009 and specifically making ovens for RVs since 2012. [Kaylor Decl. ¶¶ 5, 7.] Both companies manufacture a variety of different appliances and furnishings for RVs beyond the ovens at issue in this litigation. [*Id.*; Healy Decl. ¶ 8.] But this case is all about ovens.

Furrion introduced its 2 in 1 Range Oven in May 2017, selling both a 17" and 21" model. [Healy Decl. ¶¶ 5-6.] Since its introduction, it has been a big success for the company. Furrion has sold more than 200,000 units, some directly to individual consumers but primarily to RV manufacturers who outfit their RVs with a full suite of appliances before the RVs are marketed to consumers. With a price range between $200 and $270, that means Furrion has realized sales in excess of $40 million on this one product alone. [*Id.* at ¶¶ 9, 12.] According to Furrion, there was no RV oven like it before it entered the market, and its innovation was bringing the aesthetic of upscale home appliances into RVs, primarily RV trailers which are pulled by a truck, as opposed to motor coaches which have more space and thus more traditional appliances. [*Id.* at ¶¶ 11-12.]

Way Interglobal introduced its Greystone oven in July 2018. [Kaylor Decl. ¶ 11.]

---

[1]  For the uninitiated, Elkhart, located just south of South Bend, Indiana and a little over 100 miles from both Chicago and Indianapolis is colloquially known as the "RV Capital of the World." Elkhart and the surrounding area are site of the majority of all RV production in the world. *See* "Elkhart, Indiana", *Wikipedia, available at* www.wikipedia.org/wiki/Elkhart,_Indiana (accessed October29, 2019); Hesselbart, Al, "How Elkhart Became The RV Capital of The World", *Inside Indiana Business*, June 1, 2016, *available at* www.insideindianabusiness.com/story/32117836/thursday-how-elkhart-became-the-rv-capital-of-the-world (accessed October 29, 2019).

Furrion says it became aware of what it says is an "imitation" or "direct copy" oven in August 2018. [Healy Decl. ¶ 16.] The Greystone oven, like Furrion's competing product, is a combined oven and gas range, and it is also available in both 17" and 21" inch sizes. [*Id.* at ¶ 18.] But as Way Interglobal notes, these are the standard sizes for RV ovens, and other manufacturers including Atwood, Dometic, and Suburban (which is apparently the largest RV appliance maker by market share), make ovens that are sized to fit within the same area of an RV. [Kaylor Decl. ¶ 8.] The Greystone oven is also designed to be similar in appearance to a modern, residential combination oven and range one might find in any suburban house or the showroom floor of a home appliance store.

At the cornerstone of this lawsuit are Furrion's design patents. Furrion applied for its design patents in late 2017 and 2018, and they were issued on various dates in January 2019 and June 2019. [Healy Decl. at Exs. D-G.] Those patents are laid out below, and because a picture is worth a thousand words, I will forgo a detailed written description of these patents as is the norm in design patent cases.[2].

**U.S. Patent No. D839,038 (the "D'038 Patent").** The claim included within this patent is for "[t]he ornamental design for an oven, as shown and described." [Healy

---

[2] I have not included every image or illustration from the patents in this opinion, but only a sample of them from each of the patents. The patents themselves contain images of the product from all relevant angles and all of the figures listed form the basis of the patent. [*See* Healy Decl. at Ex. D-G.] For simplicity and economy, I have only included representative figures necessary to decide the issues before me.

Decl. at Ex. D.] Representative figures of this patent include:

| Figure 1 of the D'038 Patent | Figure 6 of the D'038 Patent |
|---|---|
|  | |

As can be seen, this patent covers the top portion of the oven's design, including its cover, the hinge placement of the cover, the front façade, and the design of the grate upon which pots rest when the range's burners are in use. The remainder of the oven (such as the knobs on the front) in the figures is represented with broken lines, indicating it has not been claimed to be part of the patent. *See* 37 C.F.R. § 1.152 ("Broken lines may be used to show visible environmental structure, but may not be used to show hidden planes and surfaces that cannot be seen through opaque materials.").

**U.S. Patent No. D851,978 (the "D'978 Patent").** The claim included within this patent is likewise for "[t]he ornamental design for an oven, as shown and described." [Healy Decl. at Ex. E.] Representative figures of this patent include:



**Figure 1 of the D'978 Patent**



**Figure 2 of the D'978 Patent**

As can be seen, this patent covers the front portion of the oven's design, including its reflective glass front window, the hinges for the top glass cover, and generally the façade of the oven near the top. Once again, portions of the oven (the knobs, the front arm or handle, etc.) are presented with broken lines, indicating those portions of the product have not been claimed as part of the patent.

**U.S. Patent No. D851,979 (the "D'979 Patent").** The claim included within this patent is for "[t]he ornamental design for an oven bracket, as shown and described." [Healy Decl. at Ex. F.] Representative figures of this patent include:

| Figure 1 of the D'979 Patent | Figure 8 of the D'979 Patent |
|---|---|
|  | |

Specifically, this is the bracket on the top rear of the oven. It is visible in several of the Figures in other patents but covered by its own patent. It is used to secure the

glass cover which sits over the grate portion of the range displayed in other illustrations contained in the D'038 Patent and the D'978 Patent.

**U.S. Patent D851,990 (the "D'990 Patent").** The claim included within this patent is for "[t]he ornamental design for oven alignment part, as shown and described." [Healy Decl. at Ex. G.] Representative figures of this patent include:

| Figure 1 of the D'990 Patent | Figure 5 of the D'990 Patent |
|---|---|
|  | |

To be honest about it, the scope of this patent is not as readily apparent as the others. Most of the figure is comprised of broken lines. The claimed portions include only small portions of the bracket displayed in Figure 1, namely the rectangle portion which is visible (barely) on the front of the oven (in the top right portion of the above

figure), as well as portions of the bracket located in roughly the lower left-hand corner.

In Figure 5, there is only a single solid line (near the top left). The rest of this alignment bracket represented in the figure is represented with broken lines, indicating it has not been claimed as part of the patent. The claimed portion of the flat rectangle is the only portion of the alignment part visible to a user of the 2 in 1 Range Oven.

Furrion makes no claim as to the color of its ovens (black and stainless steel) or to the materials used (*e.g.*, the glass of the range cover). But Furrion contends Way Interglobal's competing Greystone oven is a copycat, or knockoff version, designed to capitalize on Furrion's patented designs. Images of Way Interglobal's Greystone oven and the alignment brackets used with the oven are produced below. And while not every corresponding view of the Greystone oven is available, the parties brought the physical ovens themselves to the evidentiary hearing in this case, so that I was able to observe and inspect them first hand. Images of the Greystone oven include:

| Front View of Greystone Oven | Top View of Greystone Oven |
|:---:|:---:|
|  | |

| Combined Top and Front View of Greystone Oven |
|:---:|
|  |

| Way Interglobal Alignment Part (Side) | Way Interglobal Alignment Part (Front) |
|---|---|
|  | |

With these images, one can see the front and top of the Greystone oven, as well as the bracket which holds the glass cover in place. In addition, the last two images show the oven alignment part which is alleged to infringe on the D'990 Patent.

In support of its intentional copying and infringement argument, Furrion has another piece of evidence: each product's respective product manuals that are included in the box with the oven. While not an independent claim, Furrion says this is strong evidence of the lengths Way Interglobal went to copy it. [Healy Decl. ¶¶ 22-23; *see also* DE 7 at 8-9.] Here's why: the user manual that Way Interglobal was shipping with its

ovens for roughly the first year the product was on the market has identical language to the text of Furrion's manual. This is either a blatant rip off or an exceptional coincidence. But undercutting any notion of coincidence (or any expected standardization of language as to certain safety warnings), is the fact that actual images of Furrion's 2 in 1 Range Oven were included in Way Interglobal's manual. As noted by Furrion during questioning of Way Interglobal's representative, the images in the manual were not representative of Way Interglobal's product. For example, the arm or handle on the oven doors are different. Way Interglobal's is rounded in appearance, while the image in the manual had a more trapezoid shaped handle, identical to the handle of the Furrion 2 in 1 Range Oven. Most glaring though, is the fact that the images of the ovens in the Way Interglobal manual had Furrion's trademarked logo on them, a stylized "F" displayed in the rear end of the top of the product, near where the bracket holding the glass top cover is located. [Healy Decl. ¶¶ 22-23.]

This seemingly damning evidence was addressed at the evidentiary hearing by Way Interglobal's CEO and president Wayne Kaylor. According to Kaylor, this obvious copying was all the blame of Way Interglobal's Chinese manufacturer who both manufacturers the ovens and writes the user manual. Kaylor tells me that the Chinese manufacturer changed the manual on its own accord. Kaylor did not offer any explanation as to how or why the user manuals had so many similarities beyond his speculation that because manufacturing facilities share employees or employees often move between different facilities, someone might have taken shortcuts. He testified he

was not aware of the similarities in the manuals until this litigation was brought (in July 2019) and when he inquired about it, the manufacturer said it had been revised months before (in May 2019). But he offered no definitive answer as to how the copying occurred and testified that he has not yet learned how it happened. Of course, Furrion's patents don't apply to its user manual, and it has not asserted any claims for copyright infringement. But it offers this evidence to show intent, and because there are allegations of intentional infringement, the evidence is relevant to the issues before me.

Mr. Kaylor further testified that around the time that he learned the manual for his company's oven was essentially a copy of its competitors, Way Interglobal was reaching out to Furrion to attempt to resolve their issues. Way Interglobal had heard rumors that Furrion was alleging (and apparently telling customers) that the Greystone oven infringed on Furrion's patents since shortly after the product debuted in July 2018. [Kaylor Decl. ¶ 14.] In response to those rumors and hearsay accusations (but denying that it was in fact infringing on anything), Way Interglobal changed the design of the metal grate of its gas range to distinguish it from Furrion's. [*Id.* at ¶ 15.]

## Discussion

As is often stated, preliminary injunctions are a "drastic and extraordinary remedy" only to be granted when a court is confident that the moving party has satisfied all the necessary elements. *Nat'l Steel Car, Ltd. V. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1324 (Fed. Cir. 2004). The moving party in a patent case must show (1) a likelihood of success on the merits (*i.e.* likely infringement of a valid patent); (2) a

likelihood of irreparable harm if the injunction is not granted; (3) the balance of hardships between the parties favors an injunction; and (4) the public interest likewise favors an injunction. *PHG Techs., LLC v. St. John Companies, Inc.*, 469 F.3d 1361, 1365 (Fed. Cir. 2006). And while at times federal courts have been a little squishy in applying this otherwise straightforward test—some have presumed irreparable harm in certain types of cases, others have allowed a sufficiently strong showing of one element obviate the need to show others—the Supreme Court has made clear that all four elements must be shown and irreparable harm cannot be presumed. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392–93 (2006) (holding that irreparable harm cannot be presumed for purposes of granting an injunction); *see also Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755 (7th Cir. 2012) (holding that *eBay* applies in all cases not only utility patent cases). The "frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (italics in original).

"There is no reason why patent cases require unique treatment" and "the standard of the region circuit should apply" when a district court in a patent case is tasked with deciding a motion for a preliminary injunction. *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1365-1367 (Fed. Cir. 2008). In the Seventh Circuit, if the moving party fails to clear the likelihood of success and irreparable harm hurdles, "a court's inquiry is over and the injunction must be denied." *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992). But if a plaintiff gets through the gauntlet of all four elements, "the

court then weighs all of these factors, 'sitting as would a chancellor in equity,' when it decides whether to grant the injunction. This process involves engaging in what we term the sliding scale approach; the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position. The sliding scale approach is not mathematical in nature[.]" *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001) (citations omitted). With these standards in mind, I turn to the application of them to the facts of this case to see whether Furrion has met its burden to get a preliminary injunction against Way Interglobal.

### A. Furrion's Likelihood of Success on the Merits of its Claims.

The first question I must answer is whether Furrion has demonstrated a likelihood of success on the merits. Here, the only claims asserted are for patent infringement, and so there are two questions to address: (1) Are each of Furrion's asserted patents valid? And (2) does Way Interglobal's oven infringe on what is protected by the scope of those patents?

I begin my analysis by noting that a "patent enjoys the same presumption of validity during preliminary injunction proceedings as at other stages of litigation." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009) (citing *Canon Computer Sys., Inc. v. Nu–Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998)). But Way Interglobal has challenged the validity of Furrion's patents in responding to the motion for preliminary injunction. Accordingly, "the burden is on the challenger to come forward with evidence of invalidity, just as it would be at trial. The patentee, to

avoid a conclusion that it is unable to show a likelihood of success, then has the burden of responding with contrary evidence, which of course may include analysis and argument." *Id.* Way Interglobal primarily challenges the patents in generalized terms, then argues that even if the patents aren't invalid (which it doesn't concede), the scope of Furrion's patents is exceedingly narrow. The arguments as to validity then tend to blend into each side's arguments on infringement. Thus, it's sensible to address those arguments in the same fashion, first on a general basis, then analyze each patent and whether it is likely that Way Interglobal has infringed on each patent.

Way Interglobal makes much of the fact that in Furrion's proposed claims construction, it did not produce images of its patent figures with the broken lines removed. It says this creates a situation where it is impossible to tell what is or isn't claimed within the patent. As a result, it says the patents (or at least the ones with a lot of broken lines) are invalid based on indefiniteness. Furrion responds that there is no legal requirement that it recreate or reproduce the images without broken lines, and that broken lines are contemplated and expected under the relevant regulations. *See* 37 C.F.R. § 1.152; *Hoffman v. Impact Confections, Inc.*, No. 08CV1597, 2010 WL 99072, at *1 (S.D. Cal. Jan. 6, 2010) ("The use of broken lines indicates that the environmental structure or the portion of the article depicted in broken lines forms no part of the design, and is not to indicate the relative importance of parts of a design").

Although some of the patents are difficult to decipher because of the prevalence of broken lines compared to solid ones, they are nonetheless decipherable. What the

broken lines really signify are the very limited scope of the claims contained within some of Furrion's design patents. As discussed below, that is how they will be treated.

Next, Way Interglobal argues that the functional aspects of the designs so dominate that the patents are invalid. And again, it backstops with the argument that even if they are not invalid for this reason, the scope of Furrion's patents must be construed as exceedingly limited because of the functional elements present. Way Interglobal's approach to the issue tracks the governing law. "If the patented design is primarily functional rather than ornamental, the patent is invalid. However, when the design also contains ornamental aspects, it is entitled to a design patent whose scope is limited to those aspects alone and does not extend to any functional elements of the claimed article." *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293–94 (Fed. Cir. 2010) (citations omitted). When elements of the design "serve a functional purpose," I'm not supposed to "focus on the particular design of these elements when determining infringement, but rather focus on what these elements contribute to the design's overall ornamentation." *Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1323 (Fed. Cir. 2016). Thus, where a design has "many functional elements" and "minimal ornamentation, the overall claim scope of the claim is accordingly narrow." *Id.*; *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1332 (Fed. Cir. 2015) ("The analysis of whether Ethicon's patented designs are invalid as dictated by function must also be performed at a level of particularity commensurate with the scope of the claims."). **"If the overall appearance of a claimed design is not primarily functional, the design claim**

is not invalid, even if certain elements have functional purposes." *Id.* at 1333.

To determine whether a particular feature is functional or ornamental I must consider "whether the protected design represents the best design; whether alternative designs would adversely affect the utility of the specified article; whether there are any concomitant utility patents; whether the advertising touts particular features of the design as having specific utility; and whether there are any elements in the design or an overall appearance clearly not dictated by function." *Sport Dimension*, 820 F.3d at 1322 (quoting *PHG Technologies*, 469 F.3d at 1366). Given the preliminary nature of the proceedings so far, many of these factors aren't all that helpful—there simply isn't evidence in the record that speaks to them. But I do take special note of the Federal Circuit's statements in *Sport Dimension* that when a design has "many functional elements" and "minimal ornamentation, the overall scope of the claim is accordingly narrow." *Sport Dimension*, 820 F.3d at 1323; *see also Ethicon*, 796 F.3d at 1333 ("The scope of that claim, however, must be limited to the ornamental aspects of the design, and does not extend to 'the broader general design concept.'") (quoting *OddzOn Prods., Inc. v. Just Toys, Inc.,* 122 F.3d 1396, 1405 (Fed. Cir. 1997)).

Several of the patents unquestionably involve functional elements. For example, the bracket that is the subject of the '979 Patent holds the glass cover in place. What could be more functional? Its size is invariably linked (and thus dictated) by the size and shape of the glass cover of the oven, which is in turn dictated by the size of the oven. And there was evidence that the 17" and 21" models of the ovens are dictated by

the RV manufacturers. While Furrion's counsel argued that there were numerous other ways the bracket could be designed—for example, counsel tells me that it need not run the full length of the glass cover—there's insufficient evidence of that beyond counsel's statements. There was no expert testimony or meaningful fact witness testimony concerning alternative designs that was introduced at the evidentiary hearing. That makes this case distinguishable from *Hutzler Mfg. Co. v. Bradshaw Int'l, Inc.*, because there, the party seeking the preliminary injunction "offered evidence that it considered numerous alternative designs in designing its Food Saver Line, and found no evidence that a specific design was best for storing product." *Hutzler Mfg. Co. v. Bradshaw Int'l, Inc.*, No. 11 CIV 7211 PGG, 2012 WL 3031150, *4 (S.D.N.Y. July 25, 2012) (internal quotation marks omitted). Thus, Way Interglobal has raised at least some legitimate questions that the D'979 Patent contains significant functional elements. That lessens the likelihood of success on the merits that Furrion has shown as to this patent.

Likewise, the D'978 and D'990 Patents, which concern the front door window, the grate over the burners, and front façade of the oven, contain both ornamental and functional elements. These are arguably the most ornamental of the patents at issue, but still, the size and shape of the rectangular oven window on the front of the oven is dictated by the size of the oven itself. While the window does contribute to the design of the oven, it also serves the obvious function of allowing a user to see inside the oven while it is use—that's why nearly every oven for residential use has such a window. The design of the grate likewise involves both functional and non-functional elements.

The grate clearly serves a function of holding a pot or pan in place over a gas burner, but the pattern of that grate is only partially dictated by its function and one can imagine a multitude of different patterns that could be employed. The more possible ways to create something, the more likely it is that that element is ornamental as opposed to functional. *Berry Sterling Corp. v. Pescor Plastics, Inc.,* 122 F.3d 1452, 1456 (Fed. Cir. 1997) ("Consideration of alternative designs ... is a useful tool that may allow a court to conclude that a challenged design is not invalid for functionality.")**.**

Way Interglobal has already changed the allegedly infringing grate design, which is pretty strong evidence that the grate design aspect of these patents is primarily ornamental and not functional. Thus, Furrion has demonstrated a likelihood of success as to the validity of these two patents, even if there are some functional elements. That remains true even if Way Interglobal has changed the design of its oven grate. That fact does nothing to counteract whether Way Interglobal infringed in the past, and the recovery of damages for that past infringement. But it does call into question the need to enjoin behavior that is no longer occurring.

The oven alignment part that is the subject of the D'851 Patent presents a host of potential issues. Way Interglobal's indefiniteness argument is strongest as to this patent. "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). Design patents are subject to the same

definiteness requirements as utility patents. *In re Maatita*, 900 F.3d 1369, 1375-76 (Fed. Cir. 2018). The purpose of requiring definiteness "is to ensure that the disclosure is clear enough to give potential competitors (who are skilled in the art) notice of what design is claimed—and therefore what would infringe." *Id.* at 1376. "Thus, a design patent is indefinite under § 112 if one skilled in the art, viewing the design as would an ordinary observer, would not understand the scope of the design with reasonable certainty based on the claim and visual disclosure." *Id.* at 1377.

With the broken lines stripped away, we're left with the following as the claimed scope of the D'851 Patent:

| Figure 1 of the D'990 Patent | Figure 1, Broken Lines Removed |
|---|---|
|  |  |

| Figure 4 of the D'990 Patent | Figure 4, Broken Lines Removed |
| --- | --- |
|  |  |

Again, there are additional figures contained within the D'990 Patent but these two are exemplary, and show that with the broken lines removed, there's not much left. The rectangle front of the alignment bracket, which is still visible on the sides of the oven after it has been installed is, a flat rectangle with a shiny surface. It's a surface that is flush with the rest of the oven, and that raises the question whether this design is in fact dictated by the function of the piece itself, to align the oven evenly with the countertop and to have the exposed portion of the bracket align with the rest of the oven. Furthermore, it's unclear what is ornamental about lines of the bracket which are simply straight lines, forming right angles and are not visible once the oven is installed. I would be hard pressed to say that, viewing this as an ordinary observer, I would be

confident that I could create a non-infringing product to serve the same function.

In the end, there are clearly functional elements throughout these patents which call into question either their validity or the breadth of the patents' scope. There are also definitiveness concerns, especially as to the D'851 Patent. But it's a close call and difficult to make based upon the limited evidence presented to me, with minimal prior art and no testimony regarding the actual development of the products. Thankfully, because this is a preliminary injunction, with its sliding scale methodology, a definitive yes or no answer is not necessary. *See, e.g.*, *Herbko Int'l, Inc. v. Gemmy Indus. Corp.*, 916 F. Supp. 322, 326 (S.D.N.Y. 1996) ("Although Gemmy's proof on these allegations is short of compelling, it does raise sufficient issues to decrease the likelihood that Herbko would prevail in showing that Gemmy appropriated protected aspects of Herbko's design patent."). But even if I need not decide these issues definitively, Way Interglobal has put forth enough to give me pause as to the validity or full claimed scope of Furrion's patents and that undercuts the strength of its showing of a likelihood of success on the merits.

Furthermore, validity is only half the equation. I must also determine whether Furrion has sufficiently shown that the Greystone oven's design infringes on its protected design. "[D]etermining whether a design patent is infringed is a two-step process. First, the court must construe the design patent's claim." *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1286 (Fed. Cir. 2002). To construe the scope of the design patent, the Supreme Court and Federal Circuit have held that "a design is better

represented by an illustration 'than it could be by any description and a description would probably not be intelligible without the illustration.'" *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (quoting *Dobson v. Dornan,* 118 U.S. 10, 14 (1886)). As discussed above, I have concerns about the scope of the patents in this case because of the limited matter claimed and the functional aspects of the claimed components. But the scope of the claim can still be displayed by the figures contained within the patents. I will use them as I analyze whether Furrion has shown its patents are being infringed upon.

To determine infringement, courts must use the "ordinary observer" test which was first spelled out by the Supreme Court nearly 150 years ago and still the governing test today. "[I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Egyptian Goddess*, 543 F.3d at 670 (quoting *Gorham Co. v. White*, 81 U.S. 511, 528 (1871)). "[I]nfringement will not be found unless the accused article 'embod[ies] the patented design or any colorable imitation thereof.'" *Id.* at 678 (citation omitted).

Furthermore, while I should not over-emphasize a product's novelty or lack thereof, I conduct the observations with the prior art, if any, in mind, especially in cases where it is not readily apparent that they products are not exceptionally distinct. *Egyptian Goddess*, 543 F.3d at 677. ("Where there are many examples of similar prior art

designs . . . differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art."). In performing this task, I must avoid an overly narrow examination, and "the proper inquiry" is to determine "whether the accused design has appropriated the claimed design as a whole." *Id.*

This case presents some of the difficulties inherent within this inquiry. Here, the design patents are for specific component parts of the larger oven, but the overall design of the oven itself is not claimed, as indicated by the broken lines present throughout many of the patents. Thus, I must examine these component parts "as a whole" but not fall into a trap of comparing the ovens on an "oven to oven" basis, as that would grant Furrion much greater protection than it sought or was granted. *Id.*; *see also Ethicon*, 796 F.3d at 1333 (holding that a design patent containing functional elements is "limited to the ornamental aspects of the design, and does not extend to the broader general design concept.") (internal quotation marks omitted). But likewise, I must not focus solely on the individual aspects of each component part so to compare them too minutely because "minor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement." *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) (quoting *Payless Shoesource, Inc. v. Reebok Intern. Ltd.*, 998 F.2d 985, 991 (Fed. Cir. 1993)). With that tight-rope walk act in mind, I turn to the specific infringement arguments raised by the parties.

In support of its infringement argument, Furrion relies heavily on *Crocs, Inc. v.*

*ITC*, a case involving infringement of the famously (some might say infamously) distinctive footwear. In *Crocs*, the Federal Circuit held that the administrative agency which originally addressed the claim erred when it described the scope of the design patent at issue in words, instead of relying on the illustrations and figures contained within the patent. This led to an overly narrow and restrictive scope and an incorrect finding of noninfringement. Specifically, minor differences such as the uniform width of the back strap, extent to which the strap extended to the heel of the shoe, hole shape, and hole pattern, led to an erroneous finding of noninfringement. *Crocs*, 598 F.3d at 1301.

Furrion relies on *Crocs* primarily to argue that Way Interglobal cannot overcome the similarity in its oven by pointing out minor differences. Implicit in this argument however, is a request to compare the ovens on an entire oven by entire oven basis, like the shoe to shoe comparison done in *Crocs*. But in *Crocs*, there was a single design patent that covered the entire ornamental design of the shoe, including the strap, rounded shape, and circular holes throughout the shoe. While there was some portion of the shoe that was unclaimed (namely the sole of the shoe, presumably because it lacked distinctiveness or ornamentation), most of the product was included within the scope of the design patent. That made it easy to do a side by side comparison between the two products, as the Federal Circuit did.

But that's not the case here. Furrion does not have a single design patent covering the entirety (or even most) of its 2 in 1 Range Oven. Instead it has four patents

which cover different smaller components of the oven. And so I must compare them on a component by component basis, and not let the design patents extend "to the broader general design concept." *Ethicon*, 796 F.3d at 1333 (quotation marks omitted). But I won't proceed with a verbal description of Furrion's design patents and then craft a "checklist" to determine any infringement, as was the chief error in *Crocs*.

**The D'978 and D'038 Patents.** These patents cover the oven grate, the glass cover, and the front portion of the oven. In comparing these components to the offending ovens, the similarities are evident. The glass cover is indistinguishable, each is two pieces of glass, connected with hinges on each side. Each sit flush with the sides of the oven to create a streamlined appearance. As can be seen, the hinges on the cover are somewhat distinct, with the Greystone containing an additional bracket which attaches to each piece of the glass cover.

| Figure 6 of the D'038 and D'978 Patents | Top Cover Hinge of Greystone Oven |
|---|---|
|  | |

But that's a relatively minor difference when this portion and what is covered by

these patents is examined in the whole. Likewise, the Greystone oven can be partially distinguished by a stylized notch at the front top of the oven, near where the alignment bracket, discussed below, sits. That's a difference, but a minor one. Furthermore, the Greystone oven (and its window) is rectangular as opposed to square, or at least a much "flatter" rectangle than Furrion's. This certainly creates a different visual impression.

The grates are something of a mixed bag. As discussed above, Way Interglobal recently re-designed its grate, and there's no allegation that the current grate infringes on the patents. But that does nothing to dispel any past infringement. Both grates contain a series of seven rectangles along the front part of the grate. Above each burner, there are six prongs approaching and surrounding the burner. As Way Interglobal notes, however, the bars of its grate are much thicker and squared, while those that appear in the patents are much thinner. Likewise, the six prongs on the Greystone oven taper as they reach the burner, the Furrion ones do not. Thus, they are not identical. But the test isn't identical, it's substantial similarity.

| Fig. 1 of D'038 and D'978 Patents | Greystone Oven Grate |
|---|---|
|  |  |

I think it fair to say that in the eyes of an ordinary observer, these two portions of the ovens are substantially similar in appearance. Assuming the validity of the D'038 and D'978 Patents, the front, grate, cover, and hinges of the Greystone oven are substantially similar to the Furrion 2 in 1 Range Oven. Accordingly, Furrion has demonstrated some likelihood of success on the merits on these two patents.

**The D'979 Patent.** This patent covers the bracket which holds the top cover in place. As discussed above, Way Interglobal has raised some substantial questions regarding the validity of this patent on grounds that it is primarily functional in nature. I don't think it quite carried the day on this point, and so an infringement analysis remains necessary.

Way Interglobal argues that there are differences between the two products. It points to different curvature along the side "ears" of the bracket. Likewise, the portion of the bracket which rests against the glass cover has different curvature, the Furrion bracket has a portion of metal forming a roughly 135-degree obtuse angle, while Way Interglobal's is a straight slope, followed by an angle in the opposite direction, as shown in the illustrations below.

| Closeup of Figure 7 of D'979 Patent | Underside of Greystone Oven Bracket |
|---|---|
|  | |

These are differences, but again they are rather minor ones. The brackets look substantially similar and Way Interglobal has not made a sufficient showing that I would be comfortable to posit that Furrion's patent is invalid at this stage of the litigation. Furrion has thus shown some likelihood of success on the merits as to this patent.

**The D'990 Patent.** This patent covers the piece of plastic that holds the oven to the countertop. The parties refer to this as the alignment part. As discussed above, I think Way Interglobal has raised significant arguments of invalidity by indefiniteness and functionality as to this patent. That severely undercuts any likelihood of success on the merits. But even if I set validity aside, I would be hard pressed to find infringement.

Way Interglobal points to the fact that where the claimed portions of Furrion's alignment part have rounded edges (such as the bottom portion of the rectangle piece

when viewed from the side as in Figure 4 of the D'990 Patent), the Greystone oven's alignment part has a sharper edge and is not curved. Likewise, the outside and visible portion of the Furrion alignment part extends out from the rest of the bracket, while Way Interglobal's is more flush. These are admittedly minor differences, and normally minor variations are not enough to overcome a finding of infringement. *See Crocs*, 598 F.3d at 1303-04. But where, as here, any valid scope of the patent is so narrow, minor differences are about all that could be expected. That makes the likely result on the infringement question different as to this patent, compared to the D'979 Patent which doesn't suffer from the same indefiniteness issues.

In sum, Furrion has not made what I'd call a *high* likelihood of success on the merits. At the same time, Way Interglobal has not carried its burden to overcome the presumption of validity I must give to the patents. That's not surprising, given that neither party has engaged in discovery at this point. Way Interglobal has raised legitimate questions that make me question the patents' validity and even stronger arguments as to the limited scope of the patents. But the Federal Circuit has made it clear that raising "substantial questions" as to the validity of the patents is not enough to overcome an otherwise valid showing of likelihood of success on the merits. I must examine the issue as to whether Furrion has shown a likelihood of success on the merits, with potential invalidity of the patents being a subpart of that inquiry. *Abbott Labs.*, 544 F.3d at 1364 ("The correct standard is not whether a substantial question has been raised, but whether the patentee is likely to succeed on the merits . . . The question

is not whether the patent is vulnerable; the question is who is likely to prevail in the end[.]"); *id.* at 1369 (affirming preliminary injunction and rejecting dissent's contention that "[r]aising a substantial question" as to validity is enough to preventing a preliminary injunction from issuing in patent cases). Furrion has shown some similarities between the two ovens and that shows a likelihood of infringement. To the naked eye (and perhaps the ordinary observer) the two products bear a resemblance to one another and may not be readily distinguishable.

**B.  Whether Furrion Has Sufficiently Shown It Will Suffer Irreparable Harm.**

With the likelihood of success something of a mixed bag resolved slightly in Furrion's favor, Furrion will only be entitled to a preliminary injunction if it can make a significant showing and likelihood of irreparable harm. That is because of the "sliding scale" approach utilized in the preliminary injunction context. A party may overcome a weaker showing on one element with a sufficiently strong showing on the other, so long as they do in fact satisfy all four required elements of an injunction. *See Winter*, 555 U.S. at 22; *see also id.* at 51 ("Consistent with equity's character, courts do not insist that litigants uniformly show a particular, predetermined quantum of probable success or injury before awarding equitable relief. Instead, courts have evaluated claims for equitable relief on a "sliding scale," sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high. This Court has never rejected that formulation . . .") (Ginsburg, J. dissenting). Under this rubric, Furrion needs to offer up significant evidence that it is likely to suffer irreparable harm absent

an injunction. As discussed below, its potential harm and the harm it has suffered is best characterized as lost sales, and that is not enough.

I begin my analysis by noting that "lost sales standing alone are insufficient to prove irreparable harm; if they were, irreparable harm would be found in every case involving a 'manufacturer/patentee regardless of circumstances." *Automated Merch. Sys., Inc. v. Crane Co.*, 357 F. App'x 297, 300-301 (Fed. Cir. 2009) (quoting *Abbott Labs v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006)); *Illinois Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 683 (Fed. Cir. 1990) (rejecting argument that "potential lost sales alone demonstrate manifest irreparable harm" because "acceptance of that position would require a finding of irreparable harm to every manufacturer/patentee, regardless of circumstances") (internal quotation marks omitted).

The question is thus whether Furrion has shown more than lost sales. Furrion has asserted three types of irreparable harm it is currently or will suffer absent injunctive relief: (1) loss of market share; (2) loss of good will; and (3) price erosion, *i.e.*, the ability of a manufacture with the monopoly power granted by a patent to set their own price so as to sufficiently recoup their investment and earn a profit.

In support of its price erosion theory, Furrion's main argument is in two-parts. First, it says that in order to compete with Way Interglobal, it will have to lower its price to match Way Interglobal's price. Furrion attempts to morph lost sales into price erosion by arguing that even if at the conclusion of this litigation it prevails and Way Interglobal's Greystone ovens are taken off the market, it won't be able to sell at its

original price again, as manufacturers would not pay that premium. As discussed

below, that argument is a little under-baked.

In *Automated Merch.*, the Federal Circuit once again rejected the notion that

irreparable harm based on price erosion can be founded only on reasoned speculation.

There, the Federal Circuit reversed the grant of a preliminary injunction and said:

> AMS suggests that allowing Crane to keep producing and selling
> allegedly infringing machines will lead to price erosion. To the
> extent that failing to grant a preliminary injunction would permit
> Crane to drop its prices in order to drive AMS out of the market
> entirely, this might support a finding of irreparable harm sufficient
> to warrant a preliminary injunction. But the district court cited no
> evidence (and neither party points to any evidence here) that this
> would be likely to occur; the only support for this theory of harm is
> the district court's conclusory statement that price erosion is
> possible.

*Automated Merch.*, 357 F. App'x at 301. It's true that Furrion hasn't failed to point to *any*

evidence, it just hasn't pointed to sufficient evidence that I can be left with a conviction

that price erosion, and thus irreparable harm, is likely to occur. Furrion Director of U.S.

Sales Chase Healey testified that in recent months Furrion has lost significant sales.

Specifically, it has lost "nearly 40% of its commitments" from RV manufacturers. [Healy

Decl. ¶ 28.] Mr. Healy testified that when he has spoken to some of these

manufacturers, they said that they were going with Way Interglobal because it was

offering a similar product for $15 to $30 less than Furrion. [*Id.* at ¶ 29.] He further

testified that in response to this, Furrion has lowered its price in order to compete with

Way Interglobal and that "[a]s a practical matter" he does not think Furrion would ever

be able to raise its prices back to where they were, even if Way Interglobal were precluded from the market going forward. [*Id.* at ¶ 30.]

While Mr. Healy, Furrion and its counsel call this price erosion, it strikes me as nothing more than lost sales gussied up and called price erosion. Nowhere in Mr. Healy's testimony or in other evidence offered was any suggestion that Furrion would be exiting any market as a result of Way Interglobal's Greystone ovens. Or that it would be unable to sustain its business without the ability to charge the premium it currently is charging. Indeed, all the evidence was to the contrary. Mr. Healy testified that Furrion had a wide variety of products across multiple product lines. He further emphasized that Furrion considers and positions itself as a "premium brand" in the market as opposed to other, cheaper brands. That's a reality of premium brands across almost every market where premium brands are sold at a higher price compared to more affordable options, which may be of lower quality, but are often indistinguishable in substance. Manufacturers were obviously willing to pay Furrion's premium price until a competitor came along. If that competitor were to exit the market (as would be one possible result if Furrion wins this lawsuit), it stands to reason that demand for these ovens will remain and manufacturers will go back to paying what they paid when they purchased Furrion's 2 in 1 Range Overs during its first two years on the market.

Nor is it evident that Way Interglobal's infringement is what is causing the harm. "To show irreparable harm, it is necessary to show that the infringement caused harm in the first place. Sales lost to an infringing product cannot irreparably harm a patentee

if consumers buy the product for reasons other than the patented feature." *Apple, Inc. v.*

*Samsung Elecs. Co.*, 678 F.3d 1314, 1324 (Fed. Cir. 2012). Throughout the evidentiary

hearing, Furrion emphasized that the key to the success of the 2 in 1 Range Oven is that

it brings the overall aesthetic of a home kitchen to an RV. But Furrion's design patents

do not cover the overall aesthetic of the oven, or anything close to the entire oven.

Instead, the patents cover discrete components of the oven: the grate, cover and front

façade design (the D'038 Patent and the D'978 Patent), the metal bracket which holds

the glass cover (the D'979 Patent), portions of the bracket which helps mount the oven

to the countertop (the D'990 Patent), and the front glass window of the oven door (the

D'978 Patent). Each of these components probably contributes to the overall aesthetic,

but with so much of the oven unclaimed, it's difficult to say the patents drive demand

at this stage in the litigation.

Finally, the evidence presented by Furrion undercut its own argument as to what

was driving RV manufacturers' purchasing decisions. There was no evidence from an

RV manufacturer as to why they have switched from one product to the other. But Mr.

Healy testified that RV manufacturers have told him that steel tariffs have raised their

prices and so they're looking to cut costs where they can, *e.g.*, on third-party appliances.

The fact the Greystone oven has a similar aesthetic style to the Furrion product is not

enough. There was no testimony that RV manufacturers were buying these ovens

because of the specific features covered by Furrion's design patents. Without some

evidence on that front, I would be leery of finding that Furrion's alleged irreparable

harm could be traced to Way Interglobal's infringement.

In sum, the harm Furrion is allegedly suffering is that it is selling fewer ovens and that buyers have cancelled orders because Way Interglobal is beating Furrion on price. That is certainly no laughing matter. But it is a purely economic harm, and without more, it is insufficient to make the necessary showing of likely irreparable harm.

**C. The Balance of Harms and Public Interest Do Not Favor Furrion.**

Having found that Furrion has made colorable arguments on the merits but failed to show that the harm it might suffer as a result would be irreparable, I need not evaluate the balance of harms and public interest factors. *Abbot Labs.*, 971 F.2d at 11. Nonetheless, I think it is worth discussing the relative positions of the parties and how a balance of the harms shakes out in this case. It's at best a draw, and in several key ways, the balance favors Way Interglobal. That's another reason to deny the injunction.

Furrion's alleged harm is that it is losing sales it would otherwise be making because Way Interglobal is undercutting it on price. On the one hand, without an injunction, that harm will continue. If that harm is being wrongfully caused by Way Interglobal's infringement, then it will be responsible for compensating Furrion. On the other hand, if an injunction is issued, Way Interglobal would be unable to legally sell its Greystone oven, full stop. RV manufacturers, who are fulfilling orders from RV dealers will have to cancel those orders or seek a replacement (likely from Furrion). This could result in manufacturing and consumer delays, harms that will be suffered by

individuals entirely unaware of this lawsuit.

Furthermore, Furrion's witness painted the company as a diverse entity, with a high-end reputation in the market. I don't believe it is likely to suffer immense loss of public image or good will for it's innovativeness as a result of the Greystone oven continuing to be on the market while this litigation runs its course. *See Kimberly-Clark Worldwide, Inc. v. Tyco Healthcare Grp. LP*, 635 F. Supp. 2d 870, 880 (E.D. Wis. 2009) ("The continued existence of a competitor's product prior to a decision on the merits cannot be expected to count as a black mark against [Kimberly-Clark's] reputation for innovation or anything else."). This isn't a trademark case where one party is suing another for flooding the market with poor quality counterfeit products which undermine the trademarked brand's built-up cache with discerning consumers. And if Furrion prevails, it will be made financially whole.

Finally, as to the public interest, Furrion is correct that the law tells intentional infringers that they have assumed the risk of an injunction by engaging in intentional infringement. *See, e.g.*, *Sanofi-Synthelabo v. Apotext, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006). And the public certainly has an interest in valid patents being protected. *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 647 (Fed. Cir. 2015) ("the public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his inventions"). But without a sufficient showing on the other three elements, Furrion cannot obtain a preliminary injunction on the basis of these general principles alone.

**Conclusion**

In so ruling, I don't express an ultimate conclusion on the merits of this case. There are questions concerning the validity of Furrion's patents, including their definiteness and functionality. But at the same time, there is no denying that there are visual similarities between the two products. Furthermore, Way Interglobal's explanation as to how and why its product was being sold with an instruction manual that not only had more-than-coincidentally similar language and exact copies of Furrion's product images certainly leave something to be desired. Perhaps it was an innocent mistake on its part and simply sloppiness on the factory it contracted with. Perhaps discovery will reveal more evidence that Way Interglobal intentionally copied the ovens, and Furrion's patents will survive a fully fleshed out invalidity argument. But those will be addressed another time. For now, Furrion's Motion for a Preliminary Injunction [DE 6] is DENIED.

SO ORDERED on October 30, 2018.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT