UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| FURRION PROPERTY HOLDING LIMITED and FURRION LIMITED, ) ) ) Plaintiffs, ) ) vs. ) ) WAY INTERGLOBAL NETWORK, LLC, ) ) ) ) Defendant. ) | Cause No. 3:19-CV-566-PPS-MGG |

## OPINION AND ORDER

Plaintiffs Furrion Property Holding Limited and a related company sued Way Interglobal alleging that Way infringed on their utility patent and multiple design patents. The parties are competitors in the recreational vehicle appliance market and the patents in dispute describe an oven or portions of an oven for use in RVs. I held a claims construction hearing in January to help me discharge my duty to construe the claims of the various patents at issue in this case.

As discussed further below, claims construction for utility patents is different from claims construction for design patents.  After setting out the governing standards, I'll start by addressing the claims in the one utility patent at issue in this case. [U.S. Patent No. 10,527,292 (the '292 Patent)]. I will then turn my attention to the several design patents at the center of this dispute. [U.S. Design Patent Nos. D839,038 (the D'038 Patent); D851,978 (the D'978 Patent); D851,979 (the D'979 Patent); D851,990 (the D'990 Patent), and D872,516 (the D'516 Patent)].

## The Governing Legal Standards

The exclusivity right of a patentholder to prevent others from making, using, or selling the patented invention is granted in exchange for the "full disclosure" of the invention. *Markman v. Westview Instruments Inc.*, 517 U.S. 370 (1996). This means that "a patent must describe the exact scope of an invention and its manufacture to 'secure to [the patentee] all to which he is entitled, [and] to apprise the public of what is still open to them.'" *Id*. at 373 (quoting *McClain v. Ortmayer*, 141 U.S. 419, 424 (1891)). These requirements are met by the "specification" of the patent, which describes the invention "in such full, clear, concise, and exact terms as to enable any person skilled in the art . . . to make and use the same," and by the patent's "claims," which "particularly poin[t] out and distinctly clai[m] the subject matter which the applicant regards as his invention." 35 U.S.C. § 112.

Someone bringing an allegation of infringement must show that a patent's claim "'covers the alleged infringer's product or process,' which in turn necessitates a determination of 'what the words in the claim mean.'" *Markman*, 517 U.S. at 374 (quoting H. Schwartz, Patent Law and Practice 1, 80 (2d ed. 1995)). The two steps of infringement analysis are: (1) "determining the meaning and scope of the patent claims asserted to be infringed," and (2) "comparing the properly construed claims to the device accused of infringing." *Markman v. Westview Instruments*, 52 F.3d 967, 976 (Fed. Cir. 1995); *See also Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004).

For better or worse, step one—claims construction—is a matter for the court. *Markman*, 517 U.S. at 390. What this means is that where the meaning of claim terms is disputed, the court resolves the dispute to "clarify and explain what the claims cover." *Baxter Int'l, Inc. v. CareFusion Corp.*, 2019 WL 1897063, at *1 (N.D. Ill. Apr. 29, 2019) (citing *Terlep v. Brinkmann Corp.*, 418 F.3d 1379, 1382 (Fed. Cir. 2005)); *see also Markman*, 517 U.S. at 373. "Claim construction seeks to ascribe the 'ordinary and customary meaning' to claim terms as a person of ordinary skill in the art would have understood them at the time of invention." *Sumitomo Dainippon Pharma Co., v. Emcure Pharm. Ltd.*, 887 F.3d 1153, 1157 (Fed. Cir. 2018). "As a general rule, the ordinary and customary meaning controls unless 'a patentee sets out a definition and acts as his own lexicographer, or . . . the patentee disavows the full scope of a claim term either in the specification or during prosecution.'" *Id.* (quoting *Thorner v. Sony Computer Entertainment Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)).

As the Federal Circuit teaches in *Sumitomo*, "[t]he plain claim language marks the starting point for our analysis." *Sumitomo*, 887 F.3d at 1157. But applying the understanding of a person of ordinary skill in the art requires consideration of the disputed term "not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). "[T]he context in which a term is used in the asserted claim can be highly instructive." *Id.* at 1314. The specification is "always highly relevant to the claim construction analysis," and is usually dispositive

3

as "it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582. (Fed. Cir. 1996); *see also Phillips*, 415 F.3d at 1315.

## Discussion

As noted above, there are six different patents at issue in this case—one utility patent and five design patents. I'll start with the utility patents before turning to the design patents.

**1. Claims to be Construed in Furrion's Utility Patent (the '292 Patent)**

The parties disagree as to the construction of two claim terms in Furrion's '292 Patent, specifically the terms "hinge" and "vent." Generally, Furrion argues that each term needs no construction and should be construed according to its ordinary and plain meaning, while Way argues that each term should be construed more narrowly. The disputed language will be highlighted within the language of the patent.

> 1. A gas range comprising: an oven comprising: an oven cavity; and an oven exhaust; a cooktop disposed above and connected to the oven, wherein the oven exhaust extends from the oven cavity to the cooktop, the cooktop comprising: a gas burner having a gas burner height; and a cooking grate disposed above the gas burner, the cooking grate having a cooking grate height; a gas oxidation height from about 10 mm to about 40 mm wherein the gas oxidation height is the difference between the cooking grate height and the gas burner height; a lid coupled to the cooktop, the lid having a front section and rear section coupled to the front section, the lid configured to cover the cooking grate in a closed position and to not cover the cooking grate in the open position, a **vent** positioned in the cooktop and connected to the oven exhaust, and **a hinge coupling the rear section of the lid to the cooktop, the hinge defining a pivot axis disposed below the vent**.
>
> 13. A counter comprising: a gas range positioned within a counter, the gas range comprising: an oven comprising: an oven cavity; and an oven exhaust; a cooktop disposed above and connected to the oven, wherein the oven exhaust extends from the oven cavity to the cooktop, the cooktop comprising: a gas burner having a gas burner height; and a cooking grate

disposed above the gas burner, the cooking grate having a cooking grate height; a gas oxidation height from about 10 mm to about 40 mm wherein the gas oxidation height is the difference between the cooking grate height and the gas burner height; a lid coupled to the cooktop, the lid having a front section and rear section coupled to the front section, the lid configured to cover the cooking grate in a closed position and to not cover the cooking grate in the open position, a **vent** positioned in the cooktop and connected to the oven exhaust, and **a hinge coupling the rear section of the lid to the cooktop, the hinge defining a pivot axis disposed below the vent;** and a countertop forming a level top surface of the counter and positioned on at least one side of the gas range, wherein the highest portion of the lid is substantially even with the level top surface of the counter**.**

First, the challenged phrase described in Claims 1 and 13 is "a hinge coupling the rear section of the lid to the cooktop, the hinge defining a pivot axis disposed below the vent." Furrion argues that the term "hinge," as used here, needs no construction because it is a commonly understood word in the English language and there is no intrinsic evidence that the patent uses the term in any way other than its common meaning. Way contends that the term "hinge" should be construed to mean "a hinge coupling the rear section of the lid to the cooktop, where the hinge defines an axis about which it rotates that is disposed below the vent." [DE 80.] The main difference between the parties' two constructions lies around "pivot access" compared to "an axis about which it rotates."

Furrion also seeks the proposed claim construction of the "vent" to be its plain and ordinary meaning whereas Way proposes the claim construction as "a group of openings that allow oven exhaust to pass through." [DE 80.] Furrion argues that "vent" is a common term and is used here in its common usage, without any technical or

5

specialized meaning. Specifically, a vent allows exhaust to flow through the opening as a means to release the exhaust from the oven.

Mercifully, at the conclusion of the *Markman* hearing, the parties expressed to the court a compromise where "vent" would be understood as its plain and ordinary meaning and that "hinge" would be modified to Way's interpretation. [DE 93 at 95-96.] Having considered the parties' briefs and arguments, I therefore adopt Way's proposed construction of "hinge" in Claims 1 and 13 of the '292 Patent to mean "a hinge coupling the rear section of the lid to the cooktop, where the hinge defines an axis about which it rotates that is disposed below the vent." And I construe the term "vent" in Claims 1 and 13 of the '292 Patent as needing no further construction, and thus the term's plain and ordinary meaning will be adopted as contemplated by Furrion.

### 2. Claims to be Construed in the Design Patents

Unlike utility patents, courts have recognized that design patents "typically are claimed as shown in drawings," and that claim construction "is adapted accordingly." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008). This is because it is often difficult to capture in our lexicon what is depicted in a drawing. In other words, a picture is usually worth a thousand words. Nonetheless, the process is the same as with utility patents: the analysis considers (1) "the meaning and scope of the patent claims asserted to be infringed," and (2) "comparing the properly construed claims to the device accused of infringing." *Markman*, 52 F.3d at 976.

As noted, the law is clear that a design is better represented by an illustration "'than it could be by any description and a description would probably not be

intelligible without the illustration.'" *Egyptian Goddess,* 543 F.3d at 679 (citing *Dobson v. Dornan*, 118 U.S. 10, 14 (1886)). "Given the recognized difficulties entailed in trying to describe a design in words, the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design." *Egyptian Goddess,* 543 F.3d at 679. "[M]isplaced reliance on a detailed verbal description of the claimed design risks undue emphasis on particular features of the design rather than examination of the design as a whole . . . Depictions of the claimed design in words can easily distract from the proper infringement analysis of the ornamental patterns and drawings." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1302 (Fed. Cir. 2010) (internal citation omitted). "[T]he illustration in the drawing views is its own best description." *Id.* at 1303 (citing *Manual of Patent Examining Procedure* § 1503.01 (8th ed. 2006). However, "[t]he scope of a design patent does not extend to any functional elements." *Shure Inc. v. Clearone, Inc.*, 2020 WL 6074233, at *1 (D. Del. Oct. 15, 2020) (citing *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293-94 (Fed. Cir. 2010)).

Furrion points to two cases that I find particularly helpful here: *Carlini Enters., Inc. v. Paul Yaffe Design, Inc.*, 2014 WL 4060026 (C.D. Cal. Aug. 15, 2014) and *Depaoli v. Daisy Mfg. Co., Inc.*, 2009 WL 2145721 (D. Mass. July 14, 2009). In *Carlini*, the claim construction at issue was for "motorcycle handlebars of a certain design as shown in Figures 1 to 7 [of the first patent]" and "motorcycle handlebars of a certain design as shown in Figures 1 to 8 of [the second patent]." *Carlini*, 2014 WL 4060026, at *1. The patent in *Carlini* did not describe the entire motorcycle, but instead focused on one

7

portion of the motorcycle: the handlebars. *Id.* The court construed the claim in the first patent as "The ornamental design for motorcycle handlebars, as shown in Figures 1 to 7" and the second patent as "The ornamental design for motorcycle handlebars, as shown in Figures 1 to 8." *Id.* at *4. Similarly, the claim construction in *Depaoli* states "[a]n ornamental design for an air gun sight, as shown and described in Figures 1 and 2 of the patent." *Depaoli*, 2009 WL 2145721, at *1. The claim construction in *Depaoli* did not refer to the entire air gun, but specifically focused on what was included in the patent: the gun's sight. *Id.* The court construed the claim in this case as "an ornamental design for an air gun sight, as shown and described in Figures 1 and 2 of the patent." *Id.* at *10.

Here, Furrion's proposed construction for several of the design patents is for what looks like an entire oven. The only reason the drawings show an entire oven is because they make liberal use of broken lines. But the focus for claims construction purposes must be on the solid lines only. This is because broken lines in a drawing for a utility patent are not considered part of the claimed design. Often, they are included to help provide perspective, but they are not part of what is being claimed. *See* 37 C.F.R. § 1.152 ("Broken lines may be used to show visible environmental structure but may not be used to show hidden planes and surfaces that cannot be seen through opaque materials."); *Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1313 (Fed. Cir. 2001) (drawings showing drawer pulls in broken lines excludes the door pulls from the claimed design). As the Federal Circuit has repeatedly stated: "If features appearing in the figures are not desired to be claimed, the patentee is permitted to show the features in broken lines to exclude those features from the claimed design, and the failure to do

8

so signals inclusion of the features in the claimed design." *Contessa Food Products, Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1378 (Fed. Cir. 2002) (abrogated on other grounds by *Egyptian Goddess*).

As mentioned, the design patents in this case are ladened with broken lines. Helpfully, Furrion's expert witness Paul Hatch added color to aid the viewer in determining what is covered by the patent in his expert report. [DE 62-1.] The color images are extremely helpful in understanding the scope of the patent and distinguishing it from the broken lines.

Furrion's Patent D'978 covers the front portion of the oven's design, including its reflective glass front window, the hinges for the top glass cover, and generally the façade of the oven near the top. Furrion suggests D'978 should be construed as the "ornamental design for an oven as shown in Figures 1-7." But as can be seen below, such a construction would be misleading because vast parts of the oven (the knobs, the front arm or handle, etc.) are presented with broken lines, indicating those portions of the product have not been claimed as part of the patent. Additionally, some of the areas filled in color include broken lines, obscuring what is and is not covered by the patent.



Furrion's Patent D'979 is the bracket on the top rear of the oven. The bracket is visible in the several of the Figures in other patents but covered by its own patent. The bracket is used to secure the glass cover of the grate portion of the range displayed in other illustrations contained in the D'038 Patent and the D'978 Patent. Most of the lines in Furrion's figures are solid.



Out of all of Furrion's patents, D'978 and D'979 have the most solid lines.

By contrast, the illustrations in Furrion's other patents are comprised mostly of broken lines, which are difficult to decipher. The best example being the D'990 Patent. Broken lines comprise most of the figures and it is difficult to determine what exactly is depicted. The claimed portions include only small portions of the bracket, namely the

10

rectangular portion which is visible on the front of the oven (in the top right portion of the figure below), as well as portions of the bracket located in roughly the lower left-hand corner of the figure. In Figure 5, there is only a single solid line (near the top left). The rest of this alignment bracket shown in this figure is represented by broken lines, indicating it has not been claimed to be part of the patent. The claimed portion of the flat rectangle is the only portion of the alignment part visible to a user of the oven. After removing the broken lines, little remains.



Figure 1 (with color)     Figure 1 (solid lines only)     Figure 5 (with color)

Patents D'038 and D'516 similarly show few solid lines. Patent D'038 covers the top portion of the oven's design, including its cover, the hinge placement of the cover, the front façade, and the design of the grate upon which pots rest when the range's burners are in use. The remainder of the oven (such as the knobs on the front) in the figures is represented by broken lines, indicating it has not been claimed to be part of the patent. Here are representative figures of the D'038 patent (claimed portions are colored):





Patent D'516 is also mostly comprised of broken lines and the claimed portions include only portions of the glass lid and burners. After removing the broken lines, little remains.



Here, as with Furrion's proposed construction of the D'978 patent, Furrion's proposed construction of the D'516 patent includes the entire oven, but directs the viewer to look at the figures to determine what is covered: "The ornamental design for an oven as shown and described in Figures 1-7." [DE 67 at 2-4] (Patent '979 has Figures 1-9 and Patent '516 has Figures 1-8). Way argues that Furrion should not be allowed to claim the broken lines or mislead a jury. [DE 63 at 6.] As I noted above, it is common practice in the patent world to include broken lines to provide some perspective on what is being claimed. *See The Manual of Patent Examining Procedure* § 1503.02 (8th ed. 2006) ("Unclaimed subject matter may be shown in broken lines for the purpose of illustrating the environment in which the article embodying the design is used."). And indeed, Furrion does not claim that the broken lines are covered under its patent claim. [DE 66 at 5.]

Comparing Furrion's patents to the patents in *Carlini*, which only display the handlebars without the entire bicycle indicated in broken lines, the *Carlini* Figures are quite clear about what is being protected by the patent. *Carlini*, 2014 WL 4060026, at *1 ("[T]he patents-in-suit do not disclaim any features by way of broken lines. Thus, the designs shown in the figures make up the entirety of the claimed designs of the patents."). Having reviewed the design patents and their drawings, I find a number of the drawings show an entire oven identified through broken lines with only small portions indicated as covered by their respective patent. As shown above, this confusion mostly dissipates when viewing the images prepared by Furrion's expert witness, which fill in the solid lines with different colors and are extremely helpful in understanding the scope of the patent and distinguishing what is covered from what is not. [DE 62-1.]

While I understand the necessity of the broken lines in these patents, I find it necessary to indicate in the claim construction that the unclaimed features are represented by broken lines, as other courts have done. *See Shure*, 2020 WL 6074233, at *9 (construing the claim as "The ornamental design for an array microphone assembly, as shown in the solid lines and associated claimed surfaces of Figures 1-6 and described in the specification of the '723 patent. The broken lines in Figures 1-6 of the '723 patent form no part of the claimed design. The square shape of the claimed design is functional."); *Junker v. Med. Components, Inc.*, 2017 WL 4922291, at *7 (E.D. Pa. Oct. 31, 2017) ("The D'839 Patent claims the ornamental design of a handle for an introducer sheath, as shown in Figures 1-9. The broken lines in the Figures of the D'839 Patent

represent unclaimed subject matter."); *Deckers Outdoor Corp v. Romeo & Juliette, Inc.*, 2016 WL 7017219, at *6 (C.D. Cal. Dec. 1, 2016) (adopting the claim construction for four ornamental patents as "The ornamental design for a portion of a footwear upper as shown in the figures of the [relevant design] Patent (FIGS. 1 – [6, 7, 28]), excluding portions shown in broken lines.").

Therefore, I will construe each design patent as follows:

U.S. Patent No. D839,038 (the D'038 Patent): "The ornamental design for a portion of an oven, as shown in Figures 1-7, excluding portions shown in broken lines."

U.S. Patent No. D851,978 (the D'978 Patent): "The ornamental design for a portion of an oven, as shown in Figures 1-7, excluding portions shown in broken lines."

U.S. Patent No. D872,516 (the D'516 Patent): "The ornamental design for a portion of an oven, as shown in Figures 1-8, excluding portions shown in broken lines."

U.S. Patent No. D851,979 (the D'979 Patent): "The ornamental design for a portion of an oven, as shown in Figures 1-9, excluding portions shown in broken lines."

U.S. Patent D851,990 (the '990 Patent): "The ornamental design for a portion of an oven, as shown in Figures 1-7, excluding portions shown in broken lines."

3. **Functionality and Indefiniteness**

On a final note, Way argues throughout the claim construction phase that Furrion's patents fail due to functionality or indefiniteness. [DE 63, 65.] Furrion responds that the functionality and indefiniteness arguments regarding overall design are not appropriately raised at the claim construction stage but may be raised in a motion for summary judgment. [DE 64, 66.]

"A patent shall be presumed valid" and the burden of establishing invalidity, which requires clear and convincing evidence, rests upon the party asserting such invalidity. 35 U.S.C. § 282; *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1157 (Fed. Cir. 2004). "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus Inc. v. Biosig Instruments, Inc.* 572 U.S. 898, 901 (2014). "Whether to decide the issue of invalidity based on indefiniteness at the claim construction stage depends on the particular circumstances and claims at issue in a given case, and is a matter within a court's discretion." *Junker*, 2017 WL 4922291, at *2.

After considering the parties' arguments and based on the circumstances of this case, I find that deciding the arguments of functionality and indefiniteness now in a vacuum would be problematic. Therefore, I exercise my discretion and decline to consider issues of invalidity based on indefiniteness at the claim construction stage. The parties may raise these issues at summary judgment.

**ACCORDINGLY:**

The patent claim terms presently at issue shall be construed as explained above.

**SO ORDERED on April 27, 2021.**

>/s/ Philip P. Simon
>PHILIP P. SIMON, JUDGE
>UNITED STATES DISTRICT COURT